UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD BROWN,

                Petitioner,                Case Number 5:09-CV-11655
                                                          Honorable John Corbett O'Meara

v.

NICK LUDWICK,

                Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS**

This matter is before the Court on Petitioner Ronald Brown's petition for a writ of habeas corpus, filed under 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Wayne Circuit Court of first-degree premeditated murder, MICH. COMP. LAWS § 750.316, two counts of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, felon in possession with a firearm, MICH. COMP. LAWS § 750.224f, and commission of a felony with a firearm. MICH. COMP. LAWS § 750.227b. As a result of these convictions, Petitioner was sentenced to life imprisonment for the murder conviction, 35-to-70 years for the assault convictions, 2-to-5 years for the felon in possession conviction, and a consecutive two years for the felony-firearm conviction. The petition raises nine claims: (1) ineffective assistance of trial counsel; (2) police questioned Petitioner's minor children without his consent; (3) prosecutorial misconduct; (4) unreasonable delay prior to holding the preliminary examination; (5) erroneous admission of a tape recording; (6) illegal search and seizure; (7) cumulative error; (8) Petitioner can demonstrate cause and prejudice to excuse any procedural defaults; and (9) the Detroit Police Crime Lab erred in its analysis of bullet

fragments. The Court finds that Petitioner defaulted his first eight claims in the state courts, and that his ninth claim does not merit habeas relief. The Court will therefore deny the petition and deny Petitioner a certificate of appealability and permission to proceed on appeal in forma pauperis.

## I. Facts and Procedural History

Petitioner's convictions stem from the utterly senseless shooting death of a seven-year old girl.

At Petitioner's trial, fourteen year old Ahkwaan Destouche testified that he and three other friends, including Petitioner's son, Ronald Brown Jr., were playing a video game in the basement of Ahkwaan's house. When his friends left, Ahkwaan noticed that another video game that had been sitting on the arm of the couch was missing. He ran upstairs, but the three other boys were already down the street. Ahkwaan told his mother, Sherese Peterson, who then left the house with her boyfriend, Arthur Branch. When Ahkwaan went back down into the basement he found that the video game had fallen under the couch. Unfortunately, his mother and Branch were already gone.

Peterson and Branch arrived at Brown's house, and demanded return of the video game. When Petitioner's teenaged daughter and son replied that they did not have the game, Branch became enraged. He threw bricks at the house, shattering three windows, breaking a television set, and hitting Petitioner's young daughter, Christ, in the head. Christ was taken to the hospital and required three staples to close the wound.

Petitioner, who did not live at his children's house, came over the next day. He looked at Christ's head and put a rifle by the refrigerator. He told his teenaged daughter, Latonia, "this is if they try to come back over here and try something." he then left the

house in his red Tempo.

Back at the victim's house, Ahkwaan's twin brother, Ahkweem, was sitting in the dining room. His seven-year-old sister, Deva, was sitting on the couch in the front of the house drawing, and his grandmother and little brother were also at home. Suddenly, Ahkweem heard shots being fired into his house. Deva ran into the dining room and told him she had been shot. He saw she was bleeding from the chest. Ahkweem carried his little sister up to his grandmother's room, and she held Deva in her arms until the ambulance and police arrived. Deva died at the hospital from a single gunshot wound to the chest.

Petitioner's friend, Norma Scott, was at home on the evening of the shooting. Petitioner arrived in his red Tempo and told her she had to hide something for him. He gave her a 9mm handgun, and told her he would return for it. When Scott heard about Deva's death, she threw the gun in a tash bin down the street. She later told police where she had disposed of the gun, and they retrieved it.

Petitioner's son told police that Petitioner told him that he had shot up the house. But his son explained that Petitioner was drunk, and so he did not know if he was serious.

Four bullet casings were found in Petitioner's red Tempo. Another casing was recovered from Petitioner's bedroom, and bullet fragments were found near the victim's house. An evidence technician from the Detroit Police Crime Lab testified that all of the bullet casings had been ejected from the gun that Petitioner had given to Scott. Of the four bullet fragments found near the victim's house, the technician was able to identify one found near the sidewalk as having been fired by the gun Petitioner gave to Scott. Petitioner's hands tested positive for gunshot residue.

Based on this evidence, Petitioner was convicted and sentenced as indicated above.

Petitioner filed a claim of appeal in the Michigan Court of Appeals, in which he raised the following claims:

> I. Petitioner was deprived of his Ams V and XIV rights of due process when efforts to hide the children from testifying were brought to the attention of the jury.
>
> II. Petitioner was deprived of his Ams. V and XIV rights of due process when double hearsay was introduced.
>
> III. Petitioner was deprived of his Ams V and XIV rights of due process when he was convicted of assault with intent to murder without proof beyond a reasonable doubt.
>
> IV. Petitioner was deprived of his Am VI right to the effective assistance of counsel when his trial counsel failed to raise the foregoing issues (except for Issue III) and failed to request an instruction on included offense.

The Michigan Court of Appeals issued an unpublished opinion affirming Petitioner's convictions. *People v. Brown*, No. 263621 (Mich. Ct. App. December 28, 2006).

Petitioner filed a pro se application for leave to appeal with the Michigan Supreme Court, raising the issues. The application included the following new issue:

> I. There was an unreasonable delay prior to the preliminary examination.

The Michigan Supreme Court issued an order denying Petitioner's application for leave to appeal because it was not persuaded that the questions presented should be reviewed. *People v. Brown*, No. 133187 (Mich. Sup. Ct. May 30, 2007).

In August of 2007, Petitioner filed a pro se motion for relief from judgment with the Wayne Circuit Court, raising what now form his first eight habeas claims. The motion was denied in an opinion dated November 26, 2007. The trial court found, in part, that Petitioner had failed to demonstrate "good cause" under Rule 6.508(D)(3), for failing to have raised his claims during his direct appeal. Petitioner filed with a delayed application for leave to

appeal in the Michigan Court of Appeals , raising the following eight issues:

> I. Petitioner was denied his state and federal constitutional rights, due to ineffective assistance of trial counsel, when counsel instructed the jury to find his client guilty and when appellate counsel failed to argue this argument on appeal.
>
> II. Petitioner contends it was abuse of discretion for the police to question his minor children without parental consent.
>
> III. It was prosecutor misconduct when the Prosecutor used trickery and coercion to obtain statements from Petitioner's children by stating to them, what they were saying is confidential.
>
> IV. Petitioner was deprived of this state const. and federal ams. V, XIV., right of due process when his preliminary examination was unreasonable, unjustified delay.
>
> V. It was an abuse of discretion to allow a tape recording of segments into evidence which violated Petitioner's right to a fair trial.
>
> VI. Petitioner's search and seizure was illegal, where there were no sign affidavit's under oath. Furthermore, the warrant was based on an anonymous tip and later were discovered it was the friend of Petitioner, Norma Scott. Lastly the warrant was invalid and signed the day after it was executed.
>
> VII. The cumulative effect of the errors committed during Petitioner's trial require relief because he did not receive a fair trial under both state and federal constitutions.
>
> VIII. Petitioner demonstrates both good cause and actual prejudice stemming from the irregularities that support his claim for relief in this post appeal proceeding.

The Michigan Court of Appeals issued an order denying Petitioner's application for leave to appeal because Petitioner had "failed to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D)." *People v. Brown*, No. 283584 (Mich. Ct. App. November 24, 2008).

Petitioner did not timely file an application for leave to appeal the Court of Appeals' November 24, 2008 order. A letter from the Michigan Supreme Court clerk indicates that

the court received Petitioner's application for leave to appeal on March 2, 2009, and therefore it would not be accepted for filing because it was received more than 56 days after the decision of the Michigan Court of Appeals. A letter from the Michigan Court of Appeals indicates that the order denying Petitioner's appeal was sent to the Macomb Correctional Facility, his address of record, and that Petitioner was responsible for updating his address with the court.

On May 1, 2009, Petitioner commenced this action under 28 U.S.C. § 2254 by filing a petition with this Court. The petition raised the same issues he presented to the state courts in his motion for relief from judgment and the appeal that followed its denial. On December 9, 2009, Respondent filed an answer to the petition, asserting that all of Petitioner's claims were procedurally barred by his failure to timely appeal his habeas issues in the Michigan Supreme Court.

On December 22, 2009, Petitioner filed a motion to hold his petition in abeyance so he could return to state court to exhaust an additional claim. Petitioner alleged that the publicized problems with the Detroit Police Crime Lab called into question the ballistics evidence presented at his trial. Indeed, on March 20, 2009, Petitioner had received a letter from the Wayne County Prosecutor's Office informing him that his case was on the list of cases that would be reviewed in light of the problems with the crime lab. The State Appellate Defender's Office was also appointed to represent Petitioner for the specific purpose of investigating whether Petitioner had any new viable issues in light of the crime lab situation.

On December 30, 2009, this Court granted the motion to stay. During the stay, the matter was investigated by the State Appellate Defender's Office and the Michigan State

Police Forensic Science Division. Finally, in January of 2011, the state police issued reports indicating that the 9mm handgun, the shell casings, and the bullet fragments from Petitioner's case were retested. The reports confirm that the bullet casings found in Petitioner's car and by his bed were ejected from the handgun he gave to Scott after the shooting. The reports indicate, however, that a bullet fragment found near the sidewalk of the victim's house (identified as DPD tag no. 08099504) was not inconsistent with the handgun, but a positive identification could not be made. At trial, the Detorit Police Crime Lab technician had identified this same fragment as having been fired from the handgun. See Tr. IV, at 56. This discrepancy was apparently not enough to persuade the State Appellate Defender's Officer to pursue the matter any further, and they filed a motion to withdraw as counsel.

Petitioner nevertheless filed a pro se motion for relief from judgment in the trial court on November 14, 2011. The trial court denied the motion under Michigan Court Rule 6.502(G), which prohibits the filing of second-or-successive motions. Petitioner apparently did not attempt to appeal this order to the Michigan appellate courts. In fact, the trial court stated that Petitioner was prohibited from appealing the decision. Instead, in February of 2012, Petitioner filed motions in this Court that were construed as motions to re-open the case.

The case was reopened on February 16, 2012. The order reopening the case directed Petitioner to file an amended petition, and it directed Respondent to file an amended answer. Petitioner never filed the amended petition. Nevertheless, the Court will include an analysis of new evidence claim in this opinion, and it will assume that Petitioner still wishes to pursue the claims filed in the original petition.

## II. Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L.

Ed. 2d 678 (2010)((*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there

was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

### III. Analysis

### A. Claims I through VIII - Procedural Default

Petitioner's first eight claims were first presented to the state courts in his motion for relief from judgment in the trial court.[1] The trial court denied relief, finding that Petitioner had failed to demonstrate "good cause" for failing to have raised the claims on direct appeal. The Michigan Court of Appeals denied relief under Rule 6.508(D), and then Petitioner failed to timely appeal this decision to the Michigan Supreme Court. As a result, Respondent asserts that review of these claims is barred by Petitioner's procedural defaults: (1) Petitioner's failure to raise these claims on direct appeal; and (2) Petitioner's failure to timely present them to the Michigan Supreme Court.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith*

---

[1]Petitioner raised ineffective assistance of counsel claims on direct appeal and in his motion for relief from judgment, but he did so on different grounds. On direct appeal, he argued that counsel was ineffective for failing to object to evidence that Petitioner's children were hidden to prevent them from testifying and that counsel failed to object to "double hearsay." In his motion for relief from judgment Petitioner asserted that his counsel was ineffective for suggesting during closing argument that the jury find him guilty if they believed certain evidence.

-10-

*v. Murray*, 477 U.S. 527, 533 (1986). However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

First, with respect to Petitioner's failure to present his claims to the state courts on direct appeal, Michigan Court Rule 6.508(D)(3) provides that a court may not grant relief to a defendant if the motion for relief from judgment alleges grounds for relief which could have been raised on direct appeal, absent a showing of good cause for the failure to raise such grounds previously and actual prejudice resulting therefrom.

The Michigan Court of Appeals rejected Petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." This order, however, did not refer to subsection (D)(3) nor did they mention petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims. Because the form order in this case citing Rule 6.508(D) is ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the order is unexplained. *See Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010). This court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of Petitioner's claims. *Id*.

As stated, the trial court rejected petitioner's motion for relief from judgment, finding that Petitioner had not demonstrated "good cause" for failing to raise this claim during his direct appeal. Because the trial court judge denied petitioner post-conviction relief based on the procedural grounds stated in Rule 6.508(D)(3), Petitioner's post-conviction claims are thus clearly procedurally defaulted under this rule. *See Ivory v. Jackson*, 509 F. 3d 284,

292-93 (6th Cir. 2007); *See also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005).

Next, Petitioner's first eight claims are defaulted for a second reason - his failure to present them to the Michigan Supreme Court. A habeas petitioner procedurally defaults a claim if he fails to raise it in an application for discretionary review with the state's highest court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). A claim raised in the Michigan Court of Appeals but not in the Michigan Supreme Court during a prisoner's appeal of right cannot be considered in federal habeas review. See *Harris v. Stegall*, 157 F. Supp. 2d 743, 750 (E.D. Mich. 2001).

Under Michigan Court Rule 7.302(C)(3), Petitioner had fifty-six days to file a delayed application for leave to appeal with the Michigan Supreme Court after the Michigan Court of Appeals issued its decision. *Rice v. Trippett*, 63 F. Supp. 2d 784, 787 (E.D. Mich. 1999). The Michigan Court of Appeals denied his application for leave to appeal on November 24, 2008. Petitioner had fifty-six days from that date to timely file an application for leave to appeal with the Michigan Supreme Court. Petitioner did not attempt to file an application for leave to appeal with the Michigan Supreme Court until March 2, 2009, over a month after the deadline had passed. Because Petitioner did not file a timely application for leave to appeal with the Michigan Supreme Court, his claims are procedurally defaulted for this reason as well. *Seeger v. Straub*, 29 F. Supp. 2d 385, 391-92 (E.D. Mich. 1998).

Petitioner cannot establish cause to excuse either of his defaults. Petitioner alleges in his eighth claim ineffective assistance of appellate counsel as cause to excuse his first procedural default. Petitioner, however, has not shown that appellate counsel was ineffective. It is well-established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v.*

-12-

*Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court has explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the ... goal of vigorous and effective advocacy.... Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 463 U.S. at 754.

"[A] brief that raises every colorable issue runs the risk of burying good arguments-those that, in the words of the great advocate John W. Davis, 'go for the jugular,'-in a verbal mound made up of strong and weak contentions." *Id.* at 463 U.S. at 753 (citations omitted).

The Supreme Court has subsequently noted that:

> Notwithstanding *Barnes*, it is still possible to bring a Strickland claim based on [appellate] counsel's failure to raise a particular claim[on appeal], but it is difficult to demonstrate that counsel was incompetent.

*Smith v. Robbins*, 528 U.S. 259, 288 (2000).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Smith v. Murray*, 477 U.S. at 536 (*quoting Barnes*, 463 U.S. at 751-52). "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting a "dead-bang winner," which is defined as an issue which was obvious from the trial record and would have resulted in a reversal on appeal. *See*

*Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised for the first time in his post-conviction motion for relief from judgment. Petitioner's appellate counsel filed a substantial appellate brief which raised three claims. Petitioner has not shown that appellate counsel's strategy in presenting some claims and not raising other claims was deficient or unreasonable. Petitioner has therefore failed to establish cause for his procedural default of failing to raise these claims on direct review. *See McMeans v. Brigano*, 228 F.3d 674, 682-83 (6th Cir. 2000).

Nor can Petitioner excuse his second procedural default. Petitioner asserts that while his state post-conviction review proceeding was pending he was transferred to another prison. The Michigan Court of Appeals sent the order denying his application for leave to appeal to his former prison. Petitioner notified the court of appeals of this problem, after the fact, and he asked them to reissue their order. The court declined to do so, informing Petitioner that is was his responsibility to notify the court of any changes of address.

Demonstrating cause to excuse a procedural default, however, requires showing that an objective factor external to the defense impeded Petitioner's effort to comply with the state procedural rule. *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006). The Michigan Court of Appeals' act of sending its order to Petitioner's old address was not external to the defense. Rather, it was Petitioner who failed to inform the court of his new address, and therefore it was his failure that caused the delay in receiving the order.

Because Petitioner has failed to show cause to excuse his default, it is unnecessary

to reach the prejudice issue regarding his defaulted claim. *Smith*, 477 U.S. at 533; *See also Malcum v. Burt*, 276 F. Supp. 2d 664, 677 (E.D. Mich. 2003).

Additionally, Petitioner has not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has not presented any new reliable evidence that he is innocent of the crimes, as such, a miscarriage of justice will not occur if the Court declined to review petitioner's post-conviction claims on the merits.

**B. Claim IX - Detroit Police Crime Lab**

Petitioner's ninth claim - the claim he attempted to raise in the state courts during the period this proceeding was stayed - asserts that new testing by the Michigan State Police calls into question some of the forensic evidence presented at trial by the Detroit Police Crime Lab.

At trial, a technician from the Detroit Police Crime Lab testified that the bullet casings found in and on Petitioner's car, and the casing found next to his bed, were ejected from the 9mm Luger handgun that the police retrieved after Scott told them that Petitioner had her hide the handgun but she disposed of it. There were also four bullet fragments found

near the scene of the shooting. The Detroit Police Crime Lab could not connect three of the fragments, Tag Nos. 08099704, 08048904, and 08045004, with the handgun. See Tr. IV 57-59. They did, however, identify a fragment found near the sidewall of the victim's house, Tag No. 08099504, with the handgun.

The Michigan State Police re-tested all the items. Their analysis confirmed that the bullet casings were fired from the recovered handgun. They also agreed that three of the fragments could not be matched. They differed with the Detroit Police Crime Lab with respect to Tag No. 08099504. With respect to this item, the Michigan State Police report indicates that it: "is consistent with being a .38 class caliber metal jacket from a fired bullet. The partial class characteristics visible are consistent with the class of characteristics exhibited by [the Luger]. However, due to a lack of sufficient individual matching characteristics, a positive identification or elimination cannot be made."

Petitioner correctly points out that this was the one piece of physical evidence that connected the gun with the murder scene. However, even assuming that the faulty analysis is the result of a constitutional error and not just simply the result of a mistake, Petitioner is still not entitled to habeas relief based on this new evidence.

The Supreme Court has explained that in cases involving review of a state-court criminal judgment under 28 U.S.C. § 2254, "an error is harmless unless it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Fry v. Pliler*, 551 U.S. 112, 116 (2007) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)). *Fry* adopted *Brecht's* more "state-friendly standard" for cases involving collateral review of state-court decisions. *Hereford v. Warren*, 536 F.3d 523, 532-33 (6th Cir. 2008).

Even without connecting the bullet fragment found on the sidewalk to the handgun,

the case against Petitioner was overwhelming. The fact remains that the evidence indicated that Petitioner was upset that his daughter had been hit in the head with a brick and left the house in his car shortly before the shooting. After the shooting, he gave a handgun to Scott to hide. The gun had just been used to fire several rounds, because shell casings were discovered in the car and gunshot residue was found on Petitinoer's hand. Eliminating the identification of the sidewalk fragment with Petitioner's gun would only had opened up a new line of defense that Petitioner just happened to be firing his gun from his car elsewhere while someone else was shooting up the victim's house. But given the evidence of his motive and the timing, there is no realistic possibility that a jury would have found any merit in such a defense. That is, any error in the admission of the disputed evidence did not have a substantial impact on the outcome of Petitioner's trial. Therefore, Petitioner has not demonstrated entitlement to habeas relief based on this new claim.

### IV. Certificate of Appealability

Before Petitioner may appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S.

322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37. The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's claims. The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because an appeal could not be taken in good faith.

## V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that permission to proceed on appeal in forma pauperis is **DENIED**.

                                                  s/John Corbett O'Meara
                                                  United States District Judge

Date: August 8, 2013

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, August 8, 2013, using the ECF system and/or ordinary mail.

                                                  s/William Barkholz
                                                  Case Manager